UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL HILL,

               Plaintiff,

v.

PATRICK GRIFFIN, *et al.*,

               Defendants.

---

**DECISION AND ORDER**

6:10-CV-06419 EAW

## BACKGROUND

On October 5, 2018, Plaintiff filed a motion *in limine* seeking an adverse inference instruction. (Dkt. 113). Plaintiff contends that Defendants destroyed statistical evidence relevant to his claim that he was denied equal protection of the laws.

Specifically, in May 2017, Plaintiff's counsel requested the following documents from Defendants' counsel: (1) "[a]ll Orders that inmates be placed behind a 'plexiglass shield,' in temporary solitary confinement, or be placed on a restricted diet issued for White/Caucasian inmates residing in the Southport Facility's 'A-Block' from January 1, 2010–December 31, 2010;" and (2) "[a]ll 'mail watch' orders issued for White/Caucasian inmates residing in the Southport Facility's 'A-Block' from January 1, 2010–December 31, 2011." (Dkt. 113 at 3-4). By letter dated June 23, 2017, Defendants' counsel stated that any such documents had been destroyed pursuant to the Department of Corrections and Community Supervision's ("DOCCS") policy of destroying documents five years after their creation. (*Id.* at 4).

At the Court's request, Defendants' counsel filed an affidavit on October 11, 2018 (Dkt. 117), further elaborating on DOCCS' document retention practices. Counsel explained that plexiglass shield and restricted diet orders would have been retained in the Deputy Superintendent of Security's office facility file and that mail watch orders would have been retained in the Superintendent's office facility file. (*Id.* at ¶¶ 4-5). Counsel further confirmed that these records, which are retained in the form of paper documents only, would have been maintained for a period of five years and then destroyed. (*Id.* at ¶ 3).

## DISCUSSION

### I. <u>Legal Standard</u>

"[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). "In general, the adverse inference instruction is an extreme sanction and should not be imposed lightly." *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 120 (S.D.N.Y. 2008).

### II. <u>Duty to Preserve</u>

Here, the Court finds that Plaintiff has not established his entitlement to an adverse inference instruction. As an initial matter, the Court finds Plaintiff has not shown that

Defendants had a duty to preserve the documents he ultimately sought in May 2017. "[T]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). "[A] litigant is under no duty to keep or retain every document in its possession . . . [but] is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003).

In order to assess Defendants' preservation obligation in this case, it is necessary to briefly summarize the procedural history. This matter is a consolidation of two matters filed by Plaintiff in 2010 and 2011: Civil Case No. 10-cv-6419 (the "2010 Case") and Civil Case No. 11-cv-6101 (the "2011 Case"). Plaintiff's equal protection claim is set forth in the Amended Complaint in the 2011 Case (the "Amended Complaint") (Dkt. 19 in Civil Matter No. 11-cv-6101), which was consolidated into the instant matter (the 2010 Case) on November 13, 2015. (*See* Dkt. 52).

In the Amended Complaint, Plaintiff alleges in connection with his equal protection claim that then-defendant Belena Krusen (against whom Plaintiff has dismissed his claims (*see* Dkt. 116)) charged him "an inflated price for postage," Defendant Angela Bartlett required him to turn over a religious legal study guide, and various Defendants allegedly misdirected and tampered with his mail. (Dkt. 19 in Civil Matter No. 11-cv-6101 at ¶¶ 28, 30, 36-41). Plaintiff also more generally alleges that he "suffered denial of showers &

recreation, exercise by being placed on TB hold due to racial discrimination and religious harassment" (*id.* at ¶ 62) but the Amended Complaint makes no mention of Plaintiff having been put behind a plexiglass shield, placed in temporary solitary confinement, or given a restricted diet. Moreover, despite discussing in detail the various misdeeds he alleges Defendants took with respect to his mail (*see id.* at ¶¶ 36-41), Plaintiff fails to allege that he was placed on a mail watch. Therefore, the Court finds that the allegations of the Amended Complaint did not put Defendants on notice that the specific documents Plaintiff sought in May 2017 needed to be preserved.[1]

The Court further finds it would be unreasonable to expect DOCCS to have concluded from the mere assertion of an equal protection claim by Plaintiff that it was required to suspend its normal document retention policy as to all documents related to prisoners housed in the vicinity of Plaintiff during the relevant time period. A finding to the contrary would require DOCCS, which is continuously the subject of broadly pled lawsuits and grievances, to retain an unmanageable amount of documents. *See Zubulake*, 220 F.R.D. at 217 (noting that the imposition of an overly broad preservation duty would "cripple [entities] . . . that are almost always involved in litigation").

---

[1] Plaintiff's Second Amended Complaint in the 2010 Case (the "Second Amended Complaint") does state that he was placed on a restricted diet and behind a glass shield. (Dkt. 25 at ¶¶ 29, 58-59). However, the Second Amended Complaint does not assert an equal protection claim. Instead, the Second Amended Complaint alleges that the restricted diet and glass shield were instituted as retaliation for Plaintiff's prior litigation. (*Id.* at ¶ 29). Accordingly, the Second Amended Complaint also did not place Defendants on notice that restricted diet, plexiglass shield, or mail watch orders related to inmates other than Plaintiff were relevant to his claims and needed to be preserved.

The Court is not persuaded by Plaintiff's argument that a duty to preserve the allegedly destroyed documents was imposed by Magistrate Judge Feldman's February 13, 2015 Case Management Order. (Dkt. 42 in Civil Matter No. 10-cv-6419). That Order required Defendants to provide to Plaintiff "any documents prepared by any employee of the State of New York . . . in connection with the events from which the plaintiff's claims arose." (*Id.* at ¶ 3).[2] Given the operative pleading at the time Judge Feldman entered this Order (*i.e.*, the Second Amended Complaint in the 2010 Case), the Court does not read the Order as relating to documents prepared with respect to inmates other than Plaintiff, nor does the Court find that such a reading is reasonable. This Order was entered in the 2010 Case prior to consolidation and at a time when no equal protection claim had been asserted in that matter. For the reasons previously discussed, the broad reading of this Order urged by Plaintiff would be unduly burdensome to DOCCS.

At oral argument on the instant motion, Plaintiff's counsel brought to the Court's attention a document request served by Plaintiff on Defendants in the 2010 Case on December 22, 2014, while Plaintiff was proceeding *pro se*. (Dkt. 36). Therein, Plaintiff requested "all deprivation orders, restrictions orders, restrictive diet orders, shield orders and the daily review and recommendations made upon each of them." (*Id.* at ¶ 7). The Court does not find that this request encompasses the documents at issue with respect to the instant motion. This document request predates the consolidation of the 2010 Case and

---

[2] At the oral argument on this motion, Plaintiff's counsel made reference to a case management order located at Docket 25 in the 2011 Case. However, that case management order, which was entered on October 9, 2012, does not contain the language that Plaintiff relies on in connection with the instant motion.

the 2011 Case and was issued at a time when no equal protection claim was pending in the 2010 Case. The Court therefore finds that a reasonable reading of this request is for orders related to Plaintiff, not those related to some other group of allegedly similarly situated individuals, undefined in the request itself. Defendants' counsel confirmed at oral argument that Plaintiff was indeed provided copies of all restrictive diet, shield, and mail watch orders related to him.

### III. Relevancy of Destroyed Documents

The Court also finds that Plaintiff has not satisfied his burden of demonstrating that the destroyed documents would have been relevant to his claims. "[A] party seeking sanctions for spoliation must demonstrate that the evidence destroyed was 'relevant' to its claims or defenses. . . . [W]here more severe sanctions are at issue, this means that the moving party must show that the lost information would have been favorable to it." *Scalera v. Electrograph Sys., Inc.*, 262 F.R.D. 162, 178 (E.D.N.Y. 2009). "Although the burden placed on the moving party to show that the lost evidence would have been favorable to it ought not be too onerous, when the culpable party was negligent, there must be extrinsic evidence to demonstrate that the destroyed evidence was relevant and would have been unfavorable to the destroying party." *Adorno v. Port Auth. of N.Y. & N.J.*, 258 F.R.D. 217, 229 (S.D.N.Y. 2009) (citations omitted). Where it appears, on the record before the Court, that the destroyed evidence "may have supported Plaintiff's claims," but "it is equally likely that the [destroyed evidence] would not have supported Plaintiff's claims," an adverse inference instruction is not appropriate. *Stern v. Shammas*, No. 12-CV-5210, 2015 WL 4530473, at *14 (E.D.N.Y. July 27, 2015).

Here, the Court notes that it is not even clear that any of the documents sought by Plaintiff ever existed. Plaintiff has pointed to no evidence supporting such a conclusion, such as testimony that Caucasian prisoners were in fact placed behind a plexiglass shield, in temporary solitary confinement, or on a restricted diet, or were subjected to a mail watch. Under these circumstances, an adverse inference instruction is not warranted. *See Adorno*, 258 F.R.D. at 229 (denying request for adverse inference instruction where it was not clear the unproduced documents actually existed at any point).

Moreover, it is not clear on the record before the Court that the destroyed documents—assuming they did exist at some point—would have supported Plaintiff's claims. To the contrary, it seems equally likely to the Court that the *absence* of such records supports Plaintiff's claims, inasmuch as such absence is consistent with the conclusion that, unlike Plaintiff, Caucasian inmates were not placed behind a plexiglass shield, in temporary solitary confinement, or on a restricted diet, and were not subjected to a mail watch.

In support of his request for an adverse inference instruction, Plaintiff notes that he will testify at trial about racist and anti-Semitic behavior by certain employees of the Southport Correctional Facility. If Plaintiff's allegations are true, this behavior is abhorrent. However, the Court finds Plaintiff's argument purely speculative that because some Southport employees were racist and anti-Semitic, it is reasonable to assume that documents which may or may not have existed would have shown disparate treatment with respect to the specific claims made by Plaintiff. Plaintiff has proffered no evidence that the allegedly racist and anti-Semitic individuals in question had the authority to unilaterally

impose discipline of the kind he complains. Under these circumstances, Plaintiff has failed to satisfy his burden of demonstrating relevance.

For the foregoing reasons, the Court denies Plaintiff's request for an adverse inference instruction. However, the Court notes that its decision does not preclude Plaintiff, should he choose to elicit testimony regarding the allegedly missing documents, from arguing to the jury that they should draw an adverse inference. *See Klezmer ex rel. Desyatnik v. Buynak*, 227 F.R.D. 43, 52 (E.D.N.Y. 2005) (although an adverse inference instruction from the court was not warranted on the facts of the case, the plaintiff could nonetheless "argue to the jury that it should draw an adverse inference from the fact of the missing records").

## CONCLUSION

For the reasons set forth above, Plaintiff's motion *in limine* for an adverse inference instruction (Dkt. 113) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: October 17, 2018
 Rochester, New York